IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEEPER SECURITY, INC., <br><br> Plaintiff, <br><br> v. <br><br> DASHLANE, INC., <br><br> Defendant. | Civil Action No. 1:15cv7440 <br><br> Honorable <br><br> JURY DEMAND |

## COMPLAINT

Plaintiff Keeper Security, Inc. ("Keeper") complains of Defendant Dashlane, Inc. ("Dashlane") as follows:

1. This Complaint includes claims for trademark infringement under 15 U.S.C. § 1051 et seq. (the "Lanham Act"); for state law unfair competition; unjust enrichment under Illinois common law; and breach of contract:

### THE PARTIES AND BACKGROUND

2. Keeper Security, Inc. is an Illinois corporation having its principal place of business at 850 West Jackson Blvd., Suite 500, Chicago Illinois 60607.

3. Keeper is the assignee and owner of the entire interest of United States Trademark Reg. No. 3,995,241 (the "Password Keeper" mark) and Reg. No. 3,965,190 (the "Keeper" mark).

4. The mark "Password Keeper" has been registered with the United States Patent and Trademark Office since July 12, 2011; the mark "Keeper" has been registered since May 24, 2011 (together, "the Keeper marks"). The marks were assigned to Keeper on November 21, 2011. Keeper has standing to sue for any damages and injunctive relieve related to the Keeper marks.

- 2 -

     5.     Keeper is a software security company. Keeper creates the world's most downloaded and preloaded password security and management solution for mobile devices and computers.

     6.     Keeper sells a software product called "keeper" for managing user passwords and private information. Keeper protects users against hackers with a secure and convenient password manager. User's passwords, logins, credit card numbers, bank accounts and other personal information are saved in a private digital vault that is encrypted and unbreakable.

     7.     Keeper markets its products as "keeper." It has been downloaded by millions of on-line users and preloaded by global mobile operators and mobile device manufacturers who recognize that keeper is the leader in password management. On-line users have come to associate the "keeper" software product with Keeper Security, Inc., and recognize that it is the leading product in password management.

     8.     The keeper product is available over the Internet and various "app" stores, including Apple's app store. The keeper product has received thousands of five-star ratings on various app stores. For example, the latest version has received a 4.5 star rating (out of 5 stars) among 313 user reviews on Apple's app store:



9. The following are exemplary images of the keeper software product:

 

10. Dashlane, Inc. is a Delaware corporation having its principal place of business at 73 Spring St. Suite 604, New York, New York, 10012.

11. Dashlane operates the website www.dashlane.com. The website is registered to Emmanuel Schalit, the Chief Executive Officer of Dashlane.

12. Dashlane seeks to compete with Keeper by providing its own password management software. Dashlane entered the market for password management software years after Keeper. Keeper began marketing its product in 2009; upon information and belief, Dashlane's products first became available in 2011.

13. Prior to June 17, 2013, Dashlane employees made online accounts with Keeper to access the keeper service. The Dashlane employees include Rew Islam; Kevin Roulleau; and Richard Gozlan. Upon information and belief, the users were acting as agents for Dashlane.

14. In order to receive access to the keeper service, Mr. Islam, Mr. Roulleau, and Mr. Gozlan agreed to Keeper's Terms of Use.

15. Keeper's Terms of Use include an agreement (formerly referred to as Section 6.2 of the Terms of Use) that the user will not "'[r]everse Engineer,' change, modify, hack, translate, copy, distribute, pledge, assign, transfer, make derivative works, exploit, encumber or crack any portion of the Software."

16. Mr. Islam accessed the keeper service at least 13 times. Mr. Gozlan accessed the keeper service at least 8 times. Mr. Roulleau accessed the keeper service at least 4 times.

17. On June 17, 2013, Keeper informed Dashlane that Dashlane's conduct was strictly prohibited under Section 6.2 of Keeper's Terms and Conditions.

18. At some later time, but prior to April 2, 2014, Dashlane used the marks "Password Keeper" and "Keeper" on its website in order to enhance its search results with major search engines and divert web traffic and sales from Keeper to Dashlane.

19. On April 2, 2014, Keeper wrote Dashlane and Schalit another notice letter, this time identifying Keeper's intellectual property rights, including the marks "Password Keeper" and "Keeper," and requesting that Dashlane cease its use of Keeper's marks.

20. Dashlane has had notice of Keeper's intellectual property rights since at least the April 2, 2014 notice letter. Dashlane nonetheless has intentionally continued various uses of the protected and registered marks "Password Keeper" and "Keeper" in an effort to trade off of Keeper's successful reputation.

21.     Prior to the filing of this Complaint, Dashlane purchased (and continues to purchase) the "password keeper" adword on the Google search engine. As a result, internet users who search Google's search engine for Keeper Security's products, including the password Keeper product, are instead shown an advertisement for Dashlane which, in its ad results, characterizes its product as "Password Keeper."

22.     For example, typing the words "password keeper" into the Google search engine results in the following search results:



23.     Dashlane's advertisement uses the phrase "Password Keeper – Never Forget Another Password."

24.     Additionally, Dashlane and Schalit have caused online users to be presented with a URL – www.dashlane.com/Password-Keeper - that uses Keeper's registered trademarks.

25.     The display URL www.dashlane.com/Password-Keeper directs a user to Dashlane's home page, which prompts the user to "Get Dashlane – It's FREE."

26. Dashlane purposefully designed this advertisement to confuse on-line users. Dashlane is creating the untrue impression that the Password Keeper product is available through Dashlane.

27. Dashlane's pattern of conduct, including that described above, has caused customers to confuse Dashlane and Keeper's products.

28. The Keeper Security support staff has been contacted by customers who are confused between Dashlane and Keeper Security.

29. For example, Keeper Security's support staff was contacted by a subscriber to Dashlane's service. Apparently, Dashlane had given the subscriber a "Premium" account for life because "[Dashlane's] website was down for an extended period of time." The subscriber then contacted Keeper Security's support staff, saying "…Now you are asking me to pay for that service. I would expect you to fulfill your prior commitment for the free cloud backup service."

30. In another example, Keeper Security's support staff was contacted by a user who wrote "[j]ust below the picture of the Keeper App was something else – Dashlane Password. That's what I clicked on."

## JURISDICTION AND VENUE

31. This Court has personal jurisdiction over Keeper, and Dashlane.

32. Dashlane conducts business through the website www.dashlane.com. Dashlane's products are available for purchase through this website, including to residents of this judicial district.

33. Dashlane has known of Keeper's intellectual property rights since at least April 2, 2014. Dashlane continued to use the marks "Password Keeper" and "Keeper" to benefit from the goodwill and reputation of Keeper. By doing so, Dashlane has intentionally caused harm to Keeper, located in this district.

34. Dashlane has purposefully and willfully directed its intentional misuse and infringement of Keeper's trademarks at the State of Illinois (where Keeper is located), with knowledge that the brunt of Keeper's injury would be felt in the State of Illinois. Dashlane knows that Keeper is located in Chicago.

35. By transacting business over www.dashlane.com, including with customers in this district, and by using the goodwill and reputation built by Keeper in this district, Dashlane has purposefully availed itself of the privilege of conducting business in this judicial district and has established sufficient minimum contacts with the State of Illinois such that it should reasonably and fairly anticipate being haled into court in Illinois.

36. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Keeper's claims arise from the Lanham Act.

37. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Keeper resides in Illinois, Dashlane is a Delaware corporation residing in New York, and the amount in controversy exceeds $75,000.

38. To the extent Keeper's claims arise from Illinois statutory and/or common law, this Court has proper ancillary jurisdiction because it bears a logical relationship to the aggregate core of operative facts relating to Keeper's claims under the Lanham Act.

### COUNT I – INFRINGEMENT OF REGISTERED TRADEMARKS
### (LANHAM ACT § 32(a))

39. Keeper owns and has a protectable interest in the registered marks "password keeper" and "keeper."

40. As the owner of all rights, title and interest in and to the Keeper marks, Keeper has standing to maintain an action for trademark infringement under the Lanham Act, including § 32(a).

41. Keeper uses its Keeper marks in connection with its software products. Keeper has used its Keeper marks continuously since 2009. The Keeper marks are fanciful and arbitrary and are associated in the mind of the public exclusively with Keeper Security, Inc.

42. Dashlane knowingly and intentionally used, and continues to use, the Keeper marks in commerce. In one example, Dashlane has used the Keeper marks with the intention of misleading consumers who search for the phrase "password keeper" on the Google search engine to instead visit the website www.dashlane.com and in many cases, register for Dashlane's software.

43. Dashlane's unauthorized conduct has caused actual confusion, will continue to cause actual confusion, and creates at the very least a likelihood of confusion between Dashlane and Keeper Security. Dashlane's unauthorized conduct has the intended result of leading consumers interested in Keeper's products to Dashlane's website.

**COUNT II – FALSE DESIGNATION OF ORIGIN & UNFAIR COMPETITION**
**(LANHAM ACT §43(a))**

44. Keeper owns and has a protectable interest in the registered marks "password keeper" and "keeper."

45. As the owner of all rights, title and interest in and to the marks, Keeper has standing to maintain an action for trademark infringement under the Lanham Act, including § 43(a).

46. Without authorization, Dashlane has used and continue to use in commerce marks that are confusingly similar with Keeper's marks, and/or have made false designations of origin which are likely to cause confusion or cause mistake or to deceive as to the affiliation, connection, or association of Dashlane with Keeper, and/or as to the origin, sponsorship or approval of Dashlane's goods or services or commercial activities.

47. In one example, Dashlane's advertisements on the Google search engine lead users to believe that the URL www.dashlane.com/password-keeper is affiliated with Keeper Security.

48. Dashlane's conduct violates the Lanham Act, and Dashlane has unfairly competed with and injured and, unless immediately restrained, will continue to injure Keeper, causing damages to Keeper in an amount to be determined at trial, and will cause irreparable injury to Keeper's goodwill and reputation associated with the value of Keeper's marks.

49. Dashlane knew that its actions would cause confusion, mistake, or deception among purchasers, users, and the public.

50. Dashlane's continuing and knowing use of Keeper's marks constitutes false designation of origin and unfair competition in violation of § 43(a) of the Lanham Act, causing Keeper to suffer substantial and irreparable injury for which it has no adequate remedy at law.

51. Dashlane's wrongful conduct has permitted or will permit them to make substantial sales and profits on the strength of Keeper's marketing, advertising, sales and consumer recognition. As a direct and proximate result of Dashlane's wrongful conduct, as alleged herein, Keeper has been and will be deprived of sales of its products in an amount as yet unknown but to be determined at trial, and has been deprived and will be deprived of the value of its marks as commercial assets in an amount as yet unknown but to de determined at trial. Keeper seeks an accounting of Dashlane's profits and request that the Court grant Keeper three times that amount in the Court's discretion.

52. Based on Dashlane's wrongful conduct, Keeper is entitled to injunctive relief as well as monetary damages, and other remedies as provided by the Lanham Act, including Dashlane's profits, treble damages, reasonable attorneys' fees, costs, and prejudgment interest.

## COUNT III – DILUTION (LANHAM ACT §43(c))

53. Keeper owns and has a protectable interest in the registered marks "password keeper" and "keeper."

54. As the owner of all right, title and interest in and to the marks, Keeper has standing to maintain an action for trademark infringement under the Lanham Act, including § 43(c).

55. Keeper's marks are distinctive and famous within the meaning of the Lanham Act.

56. Dashlane's unlawful actions began long after Keeper's marks became famous, and Dashlane acted knowingly, deliberately, and willfully with the intent to trade on Keeper's reputation and to dilute Keeper's marks.

57. Dashlane's intentional and unauthorized actions are likely to cause confusion, mistake, or to deceive, mislead, and/or defraud consumers to believe that the substandard products sold on Dashlane's website are genuine Keeper products. The actions complained of herein have diluted and will continue to dilute Keeper's marks, and are likely to impair the distinctiveness, strength, and value of Keeper's marks, and injure the business reputation of Keeper and its marks.

58. Dashlane's conduct has caused actual confusion and diluted the value of the Keeper marks. For example, a user who had a negative experience with the Dashlane product received a free "Premium" subscription to Dashlane and tried to redeem it with Keeper Security. This is one example of a user associating a negative Dashlane experience with the Keeper marks.

59. Dashlane's acts have caused and will continue to cause Keeper irreparable harm.

## COUNT IV – CYBERPIRACY PREVENTION (LANHAM ACT §43(d))

60. Dashlane has, in bad faith, intended to profit from Keeper's marks by advertising a URL that includes Keeper's protect mark.

61. The URL - www.dashlane.com/Password-Keeper - is identical or confusingly similar to Keeper's, which is distinctive and registered. Dashlane is liable under Section 43(d) of the Lanham Act

**COUNT V – ILLINOIS DECEPTIVE TRADE PRACTICES ACT (815 ILCS 510 ET SEQ)**

62. By reason of the foregoing acts, Dashlane has engaged in, and are continuing to engage in acts which pass off its own goods or services as those of Keeper and caused a likelihood of confusion (and actual confusion) or misunderstanding as to the source, sponsorship, approval, affiliation or connection with Keeper.

**COUNT VI – UNJUST ENRICHMENT**

63. By reason of the foregoing act, Dashlane has been unjustly enriched to the detriment of Keeper. Dashlane's retention of monies gained through its deceptive business practices, acts of deceit, and otherwise, would serve to unjustly enrich Dashlane and would be contrary to the interests of justice.

**COUNT VII – BREACH OF CONTRACT**

64. Dashlane, through its employees acting as agents, breached keeper's terms of use.

65. As described further above, in exchange for a free trial to the keeper service, Mr. Islam, Mr. Roulleau, and Mr. Gozlan agreed to keeper's terms of use, which created a valid and enforceable contract.

66. Upon information and believe, Dashlane's agents caused damage by Keeper in an amount to be determined at trial by copying, making derivative works, and exploiting portions of the keeper software in violation of the terms of use.

## JURY DEMAND

Keeper Security, Inc. requests a jury trial for all issues properly tried by a jury.

## REMEDIES

WHEREFORE, PLAINTIFF Keeper Security Inc. prays for judgment against Dashlane, Inc. inclusive of each of the following:

An award of Dashlane's profits and Keeper's damages, as provided for by Section 32 the Lanham Act;

An award of damages in an amount to be proven at trial for false designation and unfair competition under Section 43 of the Lanham Act;

An award for Dashlane's profits and Keeper's damages in an amount to be proven at trial, as provided for by Section 43(c) of the Lanham Act;

An injunction prohibiting Dashlane's ongoing unlawful actions, as provided for by the Lanham Act and by 815 ILCS 510/3;

An award to Keeper of Keeper's reasonable attorneys' fees and cost;

An award to Keeper of all damages resulting to Keeper as a result of Dashlane's breach of the Terms of Use;

An aware to Keeper of all profits resulting to Dashlane as a result of Dashlane's breach of the Terms of Use;

An injunction prohibiting Dashlane's ongoing breach of the Terms of Use or misappropriation of any information in violation of the Terms of Use;

An award of treble damages as a result of Dashlane's willful and intentional conduct;

An award of any other damages determined to be appropriate under the Lanham Act, Illinois statutory or common law, or as the Court may deem just and equitable; and

An award of prejudgment interest.

Dated: August 25, 2015

        Respectfully submitted,

        */s/Dean D. Niro*
        Dean D. Niro
        Oliver D. Yang
        NIRO, HALLER & NIRO
        181 West Madison Street, Suite 4600
        Chicago, Illinois 60602
        Phone: (312) 236-0733
        Fax: (312) 236-3137
        dniro@nshn.com
        oyang@nshn.com

        ***ATTORNEYS FOR KEEPER SECURITY, INC***.